UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CANAL INDEMNITY COMPANY, a foreign corporation,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>ADAIR HOMES, INC., a Washington corporation; DANIEL PEARSON and TAMMY PEARSON, husband and wife; and K.P., an individual child minor, through his parents, Daniel Pearson and Tammy Pearson, husband and wife,<br><br>　　　　Defendants. | Case No. C09-5561BHS<br><br>ORDER GRANTING CANAL INDEMNITY COMPANY'S MOTION FOR SUMMARY JUDGMENT ON DECLARATORY JUDGMENT ACTION |

This matter comes before the Court on Plaintiff Canal Indemnity Company's ("Canal") motion for summary judgment on Canal's declaratory judgment action, declaring (a) that there is no coverage under the Canal policies issued to Defendant Adair Homes, Inc. ("Adair Homes") for the claims/lawsuits filed by the Defendants Daniel and Tammy Pearson and K.P., an individual minor, through his parents, Daniel and Tammy Pearson ("the Pearsons"), against Adair Homes for bodily injury and property damage arising out of Adair Homes' construction of a home on the Pearsons' property; and (b) that Canal has no duty to defend or indemnify Adair Homes under the Canal policies with respect to the

ORDER - 1

claims/lawsuits filed by the Pearsons against Adair Homes. Dkt. 42. The Court has considered the pleadings filed in support of and in opposition to the motion, and the remainder of the file, and grants the motion as discussed herein.

## I. INTRODUCTION AND BACKGROUND[1]

This is a declaratory judgment action filed by Canal to determine whether two commercial general liability policies it issued to Adair Homes, a construction company, provide coverage for claims made by the Pearsons against Adair Homes for faulty construction that allegedly led to water intrusion, property damage and bodily injury claims based on alleged exposure to mold. Canal is providing a defense for Adair Homes in the Pearsons' litigation under reservation of rights.

On October 2, 2001, the Pearsons entered into a contract with Adair Homes to have Adair Homes build a home on the Pearsons' property in Rochester, Washington. Under the terms of the contract, Adair Homes was responsible for framing and construction of the home, and the Pearsons were responsible for other items to complete construction of the home, such as interior painting. Adair Homes retained GEM Construction ("GEM") to perform the framing, siding and installation of windows on the Pearson home, pursuant to a 1999 subcontract GEM had with Adair Homes to construct homes for Adair Homes. GEM performed its work on the Pearsons' home in February 2002. As part of its window installation, GEM applied a caulk-type sealant around the perimeter of the windows. Construction of the home was completed in May 2002, and the construction improvements were accepted by the Pearsons on May 16, 2002.

---

[1]Adair Homes does not dispute the statement of facts as set forth in Canal's motion.

ORDER - 2

The Pearsons moved into the home in May 2002. Subsequently, the Pearsons noticed a strange smell in their son's bedroom, discovered that water had saturated the carpet in the bedroom, and claim that mold was present in the area. The Pearsons reported the problems to Adair Homes in January 2003. Adair Homes inspected the home on January 15, 2003, concluding that the problem was caused by cracked caulking around the windows of the bedroom, and that the caulking likely cracked during the warm summer months of 2002. A dispute developed between the Pearsons and Adair Homes regarding the cause and responsibility for the alleged defects, and the scope, nature and extent of the damages allegedly suffered by the Pearsons as a result of the defects.

On or about May 7, 2003, Daniel and Tammy Pearson filed a lawsuit against Adair Homes in Thurston County Superior Court, Cause No. 03-2-00875-1, alleging bodily injury due to mold exposure and property damage. Specifically, the complaint in that lawsuit (Pearson 2003 Complaint) alleges as follows:

> Adair Homes constructed the home. Immediately thereafter, Pearsons performed the actions required of them in the written materials they received from Adair. The home is not water-tight and leaks. This leakage has damaged the home, personal property in the home and has caused the growth of mold and mildew which has caused the Pearson family, especially a young child, to suffer respiratory distress. This respiratory distress is a direct result of the mold and mildew which resulted because of water penetration into the home. This mold and mildew growth makes the home unfit and unsafe to live in violation of the warranty of habitability implied by law and given as a matter of law by Adair to Pearsons.

The Pearson 2003 Complaint further alleges that the water leakage occurred because Adair Homes (a) failed to properly install the windows and doors in openings in the building structure; (b) failed to install proper weather sheathing on the house and under the siding; and (c) failed to install and seal the siding in a proper manner.

ORDER - 3

On or about January 13, 2006, the Pearsons, individually and on behalf of their minor son, filed a second lawsuit against Adair Homes in Thurston County Superior Court, Cause No. 06-2-00080-1. The two cases were consolidated by the Thurston County court in April 2006 under Cause No. 06-2-00080-1, and on April 24, 2006, the Pearsons filed their first amended complaint in the consolidated lawsuit, asserting substantially the same allegations as the 2003 Complaint. The amended complaint also alleges that Adair Homes is liable to the Pearsons for express and implied warranties; that Adair Homes engaged in a pattern of deceptive acts and practices in its sale of homes in violation of the Consumer Protection Act; and that Adair Homes made misrepresentations to the Pearsons in its sale of the home.

Adair Homes filed an answer generally denying these allegations, and filed a third-party complaint against GEM, the subcontractor that was responsible for framing the house and installing and sealing the windows.

Canal issued two commercial general liability insurance policies to Adair Homes that are relevant to this claim, Policy No. CGL014184, which was in effect from 12/15/01 to 12/15/02, and Policy No. CGL018306, which was in effect from 12/15/02 to 12/15/03.

The provisions of the two Canal policies relevant to the question of coverage for Adair Homes, for the Pearsons' claims/lawsuits, are largely identical. The coverage provision provides as follows:

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> SECTION I – COVERAGES
> COVERAGE A – Bodily Injury and Property Damage Liability
> 1.    Insuring Agreement
> a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. . . .
> ***

ORDER - 4

      b. This insurance applies to "bodily injury" and "property damage" only if:
         (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
         (2) The "bodily injury" or "property damage" occurs during the policy period; . . . .

Dkt. 43-4 p.27, Dkt. 43-5 p. 23

    The Canal policies also contain the following relevant exclusions:

      2.    Exclusions
      This insurance does not apply to:
               ***
      j.    Damage to Property
      "Property damage" to:
               ***
         (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
         (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
               ***
      Paragraph (6) of this exclusion does not apply to "property damage" included in the "products completed operations hazard."

Dkt. 43-4 p. 11, Dkt. 43-5 p.13.

    Both policies also include an endorsement which adds an additional exclusion entitled "Exclusion-Products-Completed Operations Hazard": "This insurance does not apply to 'bodily injury' or 'property damage' included within the 'products-completed operations hazard.'" Dkt. 43-4 p. 41, Dkt. 43-5 p. 39.

    Both policies contain the following definitions:

      SECTION V - DEFINITIONS
               ***
      13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
               ***
      16.    "Products-completed operations hazard":

ORDER - 5

      a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

\*\*\*

      (2)    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
      (a)    When all of the work called for in your contract has been completed.

\*\*\*

      (c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
      b.    Does not include 'bodily injury' or 'property damage' arising out of:

\*\*\*

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or
      (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products completed operations are subject to the General Aggregate Limit.
      17.    "Property damage" means:
      a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
      b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*\*\*

      21.    "Your work" means:
      a.    Work or operations performed by you or on your behalf; and
      b.    Materials, parts or equipment furnished in connection with such work or operations.

Dkt. 43-4 p. 19-20, Dkt. 43-5 p. 21-22

Both policies also include a "Mold or Organic Pathogen Exclusion," which adds the following exclusion provision:

      This insurance does not apply to any:
      1.    "Bodily injury", "property damage", "personal and advertising injury", or medical expense arising out of:
      a.    Any mold or "organic pathogen";

ORDER - 6

> b. Any substance, vapor, or gas produced by or arising out of any mold or "organic pathogen";
> c. Any material, product, building component, building or structure that contains, harbors, nurtures or acts as a medium for any mold or "organic pathogen"; or
> 2. The costs of testing for, monitoring, abatement, mitigation, removal, remediation or disposal of mold or "organic pathogens."
>
> ***
>
> The above applies regardless of any other cause, event, material, product, or building component that contributed concurrently or in any sequence to such injury or damage.
> For the purpose of this endorsement, the following definition is added:
> "Organic pathogen" means any type of bacteria, virus, fungi, mold, mushroom, or mycotoxin, or their spores, scent, or byproducts, or any reproductive body they produce.

Dkt. 43-4 p.37, Dkt. 43-5 p.34.

Canal contends that the exclusions for products-completed operations, ongoing operations, and mold and organic pathogen, bar coverage for the alleged property damage and bodily injury suffered by the Pearsons. Adair Homes disputes this interpretation of the policies.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R.

ORDER - 7

Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**III. PRODUCTS-COMPLETED OPERATIONS HAZARD EXCLUSION**[2]

Both Canal policies include Endorsement CG 21 04 11 85, entitled "Exclusion Products-Completed Operations Hazard." This endorsement adds the following exclusion to both policies: "This insurance does not apply to 'bodily injury' or 'property damage'

---

[2]Washington and Oregon both potentially have interests in the outcome of this litigation, as the Canal policies were issued to Adair Homes in Oregon and Adair Homes is incorporated in Oregon, but Washington is the location of the construction project at issue, and Adair Homes' headquarters are located in Washington and it does business in Washington. The Court finds there is no significant difference in the substantive law of these two states in determining this declaratory judgement action.

ORDER - 8

included within the products-completed operations hazard." Dkt. 43-4 p. 41, Dkt. 43-5 p. 39. The "products-completed operations hazard" is defined in relevant part as including "all 'bodily injury' or 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except . . . [w]ork that has not yet been completed or abandoned . . . ." Work is deemed to be completed when all the work called for in the contract has been completed, or when "that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project." *Id*.

This exclusion for products-completed operations hazards bars coverage for any property damage or bodily injury that may have occurred after Adair Homes completed its work in constructing the Pearson home. Adair Homes contends that this exclusion only applies to damage to real property and does not apply to personal property damage. Adair Homes also argues that the damage must occur during the course of construction. Adair Homes contends that the exclusion applies only to the work of Adair Homes and personal property damages that may have resulted from the work of the subcontractor, and thus the exclusion is inapplicable.

These arguments lack merit. The language of the exclusion is clear and unambiguous. The insurance policy defines property damage as physical injury to tangible property. Accordingly, personal property, as well as real property, is included in the exclusion. The policy also defines "your work" (Adair Homes') as "[w]ork or operations performed by [Adair Homes] or on [Adair Homes'] behalf; and materials, parts, or equipment furnished in connection with such work or operations." Dkt. 43-4, p. 20; Dkt. 43-5, p. 22. Thus, the work or operations performed by subcontractors are clearly work or operations performed on behalf of Adair Homes. Further, if materials are furnished in

ORDER - 9

connection with the work or operations of Adair Homes or its subcontractors, they qualify as Adair Homes' work and fall within the products-completed operations hazard exclusion.

The Washington and Oregon courts have construed similar products-completed operations hazards exclusions and found them unambiguous and enforceable. *See, i.e.*, *Goodwin v. Wright*, 100 Wn. App. 631 (2000); *Bresee Homes, Inc. v. Farmers Ins. Exch.*, 227 Or. App. 587 (2009). Other jurisdictions are in accord. *See, i.e.*, *Auto-Owners Ins. Co. v. Marvin Development Corp.*, 805 So.2d 888 (Fla. App. 2001); *EON Labs Mfg. v. Reliance Ins. Co.*, 756 A.2d 889 (Del. 2000); *Shelter Mut. Ins. Co. v. Gardner*, 872 F. Supp. 622 (W.D. Ark. 1995).

The clear and unambiguous language of the products-completed operations hazard exclusion bars coverage for all of the bodily injury and property damage claimed by the Pearsons' consolidated lawsuit against Adair Homes. With respect to the bodily injury allegedly suffered by the Pearsons and their child, any bodily injury liability of Adair Homes necessarily occurred after the Pearsons moved into the home, which is clearly after the work was completed and the home was put to its intended use. Thus, all of the bodily injury claims are clearly excluded from coverage by the exclusion.

The Pearsons' property damage claims are also excluded from coverage by the exclusion, because those claims did not arise until after Adair Homes had completed its contractual work and the home had been put to its intended use by the Pearsons.

## IV.  ONGOING OPERATIONS EXCLUSION

Adair Homes argues that the property damage may have occurred during the construction of the Pearson residence and not subsequent to the completion of operations. Canal responds that Adair Homes has presented no evidence that the damage occurred prior to the completion of operations. Nonetheless, even were the Court to consider an allegation

ORDER - 10

that damage occurred during the course of construction, the ongoing operations exclusion bars coverage.

The ongoing operations exclusion bars coverage for "property damage to [t]hat particular part of real property which you or any contractors or subcontractors … are performing operations if the property damage arise out of those operations . . . ." Dkt. 43-3, pg. 11; Dkt. 43-4, pg. 13. This exclusion bars coverage for damages occurring during Adair Homes' construction of the home.

Adair Homes contends that the ongoing operations of Adair Homes, or its subcontractor, caused damage to property that was not a part of the ongoing operations and thus is not excluded from coverage by the ongoing operations exclusion.

The Washington courts have interpreted the language of an ongoing operations exclusion to apply to the insureds' entire operations. *See Vandivort Constr. Co. v. Seattle Tennis Club*, 11 Wn. App. 303 (1974) (exclusion for damage caused by ongoing operations not limited to portion of property that was subject to operations, but barred coverage for all damages caused by operations). *Accord*, *William Crawford, Inc. v. Travelers Ins. Co.*, 838 F. Supp. 157 (S.D.N.Y. 1993); *Jet Line Svcs., Inc. v. American Employers Ins. Co.*, 537 N.E.2d 107 (Mass. 1989); *Goldsberry Operating Co. v. Cassity, Inc.*, 367 So.2d 133 (La. App. 1979); *Vinsant Elec. Contractors v. Aetna Casualty & Sur. Co.*, 530 S.W.2d 76 (Tenn. 1975).

The ongoing operations exclusion also bars coverage for "[t]hat particular part of any property that must be restored, repaired or replaced because [Adair Homes' or its subcontractor's] work was incorrectly performed on it." Dkt. 43-4, p. 11; Dkt. 43-5, p. 13. This exclusionary language is designed to exclude coverage for defective workmanship by the insured builder causing damage to the construction project. In *Harrison Plumbing &*

ORDER - 11

*Heating, Inc. v. New Hampshire Insurance Group,* 37 Wn. App. 621, 626 (1984), the court held ongoing operations exclusion ensures that an insured is not indemnified for damages resulting because the insured furnished defective materials or workmanship.

Accordingly, the plain and unambiguous language of the ongoing operations exclusion bars coverage for the Pearsons' property damages occurring during construction of the residence.

Adair Homes further alleges that the interpretation of the exclusions for ongoing operations and the products-completed, as urged by Canal, would prohibit all property damage coverage occurring during construction and after completion of construction, a meaning that a reasonable purchaser of commercial general liability insurance would not expect.

However, this interpretation of the exclusions is entirely consistent with commercial general liability policies. Commercial general liability policies are designed generally to provide coverage for a number of risks, including employee injuries while on the work site and physical damage to property other than the work of the insured. The two exclusions for damages to the work of the insured during construction and after completion are common "business risk" exclusions, designed to prevent the commercial general liability policy from being considered a performance bond, product liability insurance, or malpractice insurance. *See, e.g.*, *Hayden v. Mutual of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64 (2000); *Schwindt v. Underwriters at Lloyd's of London*, 81 Wn. App. 293, 302 (1996); *Aetna Cas. & Sur. Co. v. M & S Indus., Inc.*, 64 Wn. App. 916, 921 (1992). This is the insurance Adair Homes purchased.

ORDER - 12

## V. MOLD AND ORGANIC PATHOGEN EXCLUSION

The Pearsons' amended complaint asserts that "leakage has . . . caused the growth of mold and mildew which has caused the Pearson family, especially [their child], to suffer respiratory distress and other medical problems and complications." Dkt. 43-3 p. 26.

The Canal policies include a "Mold or Organic Pathogen Exclusion" which excludes coverage for "bodily injury," "property damage" or medical expense arising out of "any mold or organic pathogen," "any substance, vapor, or gas produced by or arising out of any mold or organic pathogen," as well as any "material, product, building component, building or structure that contains, harbors, nurtures or acts as a medium for any mold or organic pathogen." Dkt. 43-4 p. 37; Dkt. 43-5 p. 34. The exclusion also applies to testing, monitoring, remediation and removal of these components. The term "organic pathogen" is defined as "any type of bacteria, virus, fungi, mold, mushroom, or mycotoxin, or their spores, scent, or byproducts, or any reproductive body they produce." *Id*. Finally, the exclusion specifically states that it applies "regardless of any other cause, event, material, product, or building component that contributed concurrently or in any sequence to such injury or damage." *Id*.

Adair Homes asserts that the mold exclusion is inapplicable because water intrusion (an alleged covered damage) was the cause of the subsequent mold that resulted in personal injury.

The Court is unpersuaded by Adair Homes' argument. The mold exclusion in the policies excludes coverage for bodily injury arising out of any exposure to mold or organic pathogen. The exclusion specifically states that it applies "regardless of any other cause, event, material, product, or building component that contributed concurrently or in any sequence to such injury or damage. Thus, even were the Court to consider that water

ORDER - 13

intrusion damage caused the growth of mold that injured the Pearsons, the bodily injuries would, nonetheless, be excluded. *See, i.e*, *DeVore v. American Family Mut. Ins. Co.*, 891 N.E.2d 505 (Ill. App. 2008); *Cooper v. American Family Mut. Ins. Co.*, 184 F. Supp. 2d 960 (D. Ariz. 2002).

Accordingly, the Pearsons' claims for bodily injury are excluded from coverage by the mold and organic pathogen exclusion.

## VI.  DUTY TO DEFEND

Adair Homes makes an argument that regardless of a determination of lack of coverage, Canal has a continuing obligation to defend Adair Homes in the underlying Pearson litigation.

This argument is without merit. An insurer's duty to defend an insured ends when it is determined that a claim is not covered. *See, i.e.*, *American Best Food, Inc. v. ALEA London, Ltd.*, 168 Wn.2d 398, 405 (2010); *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 561 (1998). The procedure to follow when coverage is uncertain is to defend under reservation of rights and seek a declaratory judgment regarding the issue of coverage. Where the declaratory judgment action determines there is no coverage, as in this case, the insurer, Canal, may withdraw from the defense of the insured, Adair Homes. *See, i.e.*, *Farmers Ins. Group v. Johnson*, 43 Wn.App. 39, 44 (1986). It is only where the facts necessary to determine coverage are at issue, that the insurer must maintain a defense throughout the underlying litigation. Such is not the case here.

## VII.  ORDER

Accordingly, it is hereby **ORDERED** that Plaintiff Canal's Motion for Summary Judgment on Declaratory Judgment (Dkt. 42) is **GRANTED**. The Court hereby enters a **DECLARATORY JUDGMENT** that there is no coverage under Canal Policy No. CGL

ORDER - 14

014184, which was in effect from December 15, 2001 to December 15, 2002, or Canal Policy No. CGL 018306, which was in effect from December 15, 2002 to December 15, 2003, for any of the claims/lawsuits asserted by the Pearsons against Adair Homes for damages arising out of or related to Adair Homes' construction of a home on the Pearsons' property in Rochester, Thurston County, Washington, and that Canal has no duty to defend or indemnify Adair Homes with respect to any claims/lawsuits filed by the Pearsons against Adair Homes, including specifically, but not limited to, the lawsuits filed in the Superior Court of the State of Washington, consolidated under Thurston County Superior Court Cause No. 06-2-00080-1.

DATED this 30th day of July, 2010.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 15